2026 IL App (2d) 250223-U
No. 2-25-0223
Order filed May 20, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

GAVIN MOATS, as Special Administrator of the Estate of Gregory Moats, Deceased, Plaintiff-Appellant,

v.

ABBAS Y. RAMPURWALA, Defendant-Appellee

(Assad Shah, Sycamore Medical Associates, LLC d/b/a Northern Illinois Medical Associates, Metro Heart and Vascular Institute, Ltd., and Advocate Sherman Hospital, Defendants).

Appeal from the Circuit Court of Kane County.
Honorable Susan Clancy Boles, Judge, Presiding.
No. 23-LA-322

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in dismissing the count against defendant doctor, upon finding that plaintiff did not exercise reasonable diligence in effecting service on him.  The trial court did not err in vacating a default judgment against a defendant company, where no agent authorized to accept service on its behalf was ever served.  Affirmed.

¶ 2    Plaintiff, Gavin Moats, as special administrator of the estate of Gregory Moats, filed a wrongful death and medical negligence suit against various defendants, including Dr. Abbas Y. Rampurwala.  The trial court determined that plaintiff did not exercise reasonable diligence in effecting service on Dr. Rampurwala and dismissed the count against him (count III), with

prejudice. The court also granted, with prejudice, Dr. Rampurwala's motion to vacate a default judgment against defendant, Metro Heart and Vascular Institute, Ltd. (Metro), of which Dr. Rampurwala was its registered agent, determining that Metro was never properly served. The court, as to each ruling, also made findings pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Plaintiff appeals, arguing that he exercised reasonable diligence in serving Dr. Rampurwala and that he properly served Metro. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On March 30, 2020, Gregory Moats died as a result of coronary artery disease.

¶ 5                                    A. 2022 Complaint

¶ 6        Two years later, on March 30, 2022, plaintiff filed against defendants an eight-count wrongful death and medical negligence suit (case No. 22-LA-117). Count V was directed against Dr. Rampurwala, an interventional cardiologist, and count VI was directed against Metro. On April 14, 2022, plaintiff issued a summons directed at Metro (with Dr. Rampurwala listed as the registered agent) with a business address at 1425 North Randall Road, Elgin 60123. Also on that date, plaintiff issued a summons directed to Dr. Rampurwala at the same address. Advocate Sherman Hospital is located at 1425 North Randall Road in Elgin.

¶ 7        A return of service prepared by deputy Kira Mollohan of the Kane County Sheriff's Office reflected that, on May 9, 2022, she went to the hospital address and delivered the summons directed to Dr. Rampurwala to Milez Bennet, who she identified as "(REGISTERED AGENT) AS BUSINESS AGENT FOR" Dr. Rampurwala. She also certified that she accomplished substitute service on Dr. Rampurwala by leaving a copy of the summons at his usual place of abode. A return of service filed on May 17, 2022, and prepared by deputy Orlando Ray reflected that, on May 11, 2022, Ray went to the hospital address to serve the summons and complaint directed against Metro

and its registered agent Dr. Rampurwala. He noted he served "Miguel Carrillo-RA/P.S.O.," "Corporation Service: by leaving a copy of the Summons with an agent of said corporation." In a comments section, he noted, "Served Miguel Carrillo (Registered Agent) as Business Agent for [Metro], R/A Abbas Rampurwala."

¶ 8 On May 24, 2022, Dr. Rampurwala and Metro filed their appearance by counsel. On August 4, 2022, the case was voluntarily dismissed by plaintiff, with the trial court entering an order dismissing the suit, without prejudice. 735 ILCS 5/2-1009 (West 2022).

¶ 9                                         B. 2023 Complaints

¶ 10 On August 3, 2023, plaintiff filed a five-count complaint against defendants for wrongful death and medical negligence (case No. 23-LA-322). Count III was directed against Dr. Rampurwala, and count IV was directed against Metro. Plaintiff alleged that Rampurwala was an agent, owner, partner, employee and/or apparent agent of Metro.

¶ 11 On November 2, 2023, plaintiff filed a first amended complaint, with affidavit and reports attached pursuant to section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2022)) with summonses to issue. On the same day, the trial court granted plaintiff leave to file the amended complaint and ordered summonses to issue. Plaintiff filed the amended complaint that day.

¶ 12 On November 8, 2023, plaintiff arranged the issuance of summonses to defendants pursuant to Illinois Supreme Court Rule 101(d) (eff. April 20, 2023). The summons issued to Dr. Rampurwala was directed to him as registered agent at Advocate Sherman Hospital at 1425 North Randall Road in Elgin. The summons issued to Metro was directed to its registered agent, Dr. Rampurwala, at the same hospital address. The summonses expired after December 8, 2023. Ill.

S. Ct. R. 102(b) (eff. Apr. 24, 2023). Plaintiff placed the summonses with the Kane County Sheriff's Office for service.

¶ 13 Two returns of service were filed on January 8, 2024, with each reflecting two service attempts. The first return of service reflected that, on December 16, 2023, and January 4, 2024, deputy Orlando Ray visited the hospital address to serve the summonses directed against Metro. When he attempted service on December 16, the facility was "CLOSED ON WKNDS," with "NO STAFF PRESENT." Next, on January 4, 2024, he certified he accomplished substitute service on Metro by leaving a copy of the summons at the usual place of "abode" of each "individual defendant" with a family member age 13 or over and identified Miguel Castillo "– R/A," as business agent for Metro. The second return of service reflected that, on December 16, 2023, and January 4, 2024, deputies Ray and Jose Gomez attempted service directed against Metro on Dr. Rampurwala at the hospital address. On December 16, 2023, Ray noted that the facility was "CLOSED ON WKNDS." On January 4, 2024, Gomez asserted he served Dr. Rampurwala "(REGISTERED AGENT) AS BUSINESS AGENT FOR MIGUEL CARRILO" and, elsewhere on the return-of-service form, noted that he served, via corporation service, "MIGUEL CARILLO – R/A."

¶ 14 Neither Dr. Rampurwala nor Metro appeared at a January 16, 2024, status hearing. The trial court continued the case to March 5, 2024, for status on responsive pleadings and the remaining defendants' appearances.

¶ 15 On January 18, 2024, defendants Shah and Sycamore Medical Associates filed their answer to the first amended complaint and raised an affirmative defense. On January 23, 2024, Advocate Sherman Hospital filed an appearance and jury demand.

¶ 16 On January 31, 2024, plaintiff arranged for issuance of an alias summons to Dr. Rampurwala, without leave of court. It listed the hospital address. The February 28, 2024, return of service noted that officer Gomez attempted service at the hospital on February 12 but was unable to do so, noting that "risk said deft [(*sic*)] is not employed by hospital and its [(*sic*)] not her job to give me info." Officer Ray made a second attempt at the hospital on February 20, but was unable to do so, noting that "DR IS NOT LISTED ON DIRECTORY/LIKELY A SPECIALIST ONLY." On February 28, 2024, officer Karlee Koehring attempted service at the hospital, but was unable to do so, noting "NOT SERVED."

¶ 17 On February 5, 2024, plaintiff filed an answer to Shah and Sycamore Medical Associates' first affirmative defense. On February 28, 2024, Advocate Sherman Hospital moved to dismiss plaintiff's first amended complaint. 735 ILCS 5/2-619 (West 2022).

¶ 18 On March 12, 2024, the trial court ordered plaintiff to respond within 21 days to the hospital's motion to dismiss, noting a 14-day deadline for a reply, and setting the motion for hearing on May 14. Plaintiff responded to the motion to dismiss on March 25, 2024, and, on April 9, 2024, the hospital filed a reply. The trial court, on April 26, 2024, struck the May 14 court date, denying, with prejudice, Advocate Sherman Hospital's motion to dismiss the amended complaint based on the statute of limitations, and granting, without prejudice, the hospital's motion to dismiss the amended complaint based on an insufficient 2-622 report as to institutional negligence against Advocate. It also provided plaintiff until May 24 to file an amended/supplemental section 2-622 report, ordered the hospital to file its answer by June 21, struck the May 14 date, and ordered the parties to return to court for status on August 27, 2024.

¶ 19 On May 24, 2024, plaintiff filed an amended and supplemental physician's report and certificate of medical malpractice. On June 21, the hospital filed a motion to dismiss count V of

the first amended complaint based on the insufficiency of the section 2-622 report as to the institutional negligence allegations. The motion was noticed for July 16, and, on July 17, the court entered a briefing schedule, giving plaintiff until August 13 to respond and defendant until August 27 to reply. The court struck the August 27 case management conference and set a hearing on the motion for September 19. On August 12, 2024, plaintiff filed his response to the hospital's motion to dismiss, and, on August 27, the hospital filed its reply. On September 11, 2024, the trial court granted in part, with prejudice, and denied in part the hospital's motion to dismiss, granted plaintiff one more opportunity to file a second amended/supplemental 2-622 report as to institutional negligence, struck the September 19 court date, and continued the matter to October 16 for status. Plaintiff filed a certificate of merit on October 9, 2024. (Also, on October 9, he filed a supplemental third physician's report and physician's certificate of malpractice and institutional negligence directed against the hospital.)

¶ 20    Also on October 9, plaintiff filed a routine motion to appoint special process server, noting Dr. Rampurwala had not been served and, upon information and belief, resided at 15 Willow Bay Drive in South Barrington, Illinois, 60010, and practiced at Metro in Algonquin at 1479 Commerce Drive. He requested leave to file an alias summons to serve Dr. Rampurwala and to appoint a special process server to serve the alias summons on him. The court granted the motion that day. On October 22, 2024, plaintiff arranged for issuance of an alias summons directed against Dr. Rampurwala at his home address of 15 Willow Bay Drive, South Barrington.

¶ 21    The hospital filed its answer to plaintiff's first amended complaint on November 6, 2024.

¶ 22    In a November 21, 2024, affidavit of special process server, Dana Paschall, she averred that Dr. Rampurwalla was served via alias summons on November 18, 2024, via substitute service on his son, age 14.

¶ 23        C. 2023 First Amended Complaint – Motions Regarding Service of Process

¶ 24    On December 13, 2024, Dr. Rampurwala filed an appearance and jury demand.  On December 18, he moved to dismiss count III of the first amended complaint.  735 ILCS 5/2-619 (West 2022); Ill. S. Ct. R. 103(b) (eff. July 1, 2007) (dismissal for lack of diligence in obtaining service).  He filed an amended motion to dismiss on January 6, 2025.  Dr. Rampurwala attached plaintiff's initial 2022 complaint, the initial summons in the 2022 case, along with the appearance filed on his and Metro's behalf on May 24, 2022.  Dr. Rampurwala also attached the 2023 summonses and return of service by officer Gomez and the summons issued to Metro.

¶ 25    Dr. Rampurwala also attached his affidavit, dated December 13, 2024.  Therein, he averred that he practices at an office called Metro Heart & Vascular Institute, SC, located at 1479 Commerce Drive, Algonquin.  Throughout 2023 and 2024, he regularly practiced at that office, which was contained on the Metro Heart website, along with his name and photograph.  Dr. Rampurwala also averred that throughout 2023 and 2024, his name and office address also appeared on Yelp and HealthGrades websites.  During these years, he resided at 15 Willow Bay Drive in Barrington, and his residential address was a matter of public record and listed on WhitePages.com throughout that time.  Dr. Rampurwala further averred that, at no time did he ever attempt to evade service of process in this case and that he was never personally served with any summons and complaint in this suit.  He first received the summons and complaint when he returned home to the Willow Bay Drive address on the evening of November 18, 2024, whereupon he learned that his son had been served earlier in the evening.  On November 18, 2024, he first learned of the refiling of this case.

¶ 26    Dr. Rampurwala argued that plaintiff failed to exercise reasonable diligence in serving him and that this warranted dismissal with prejudice of count III.  He also sought Rule 304(a) language.

¶ 27     On January 24, 2025, plaintiff moved for default judgment against Metro and Dr. Rampurwala, as president, employee, and/or agent of Metro. On January 30, 2025, the trial court entered an order of default against Metro and set the case for status on April 23, 2025. On February 6, 2025, Dr. Rampurwala moved to vacate the default order against Metro, alleging that the information plaintiff included in the summons to Metro listed an improper address for the registered agent and corporation. (On February 11, 2025, he filed an amended motion.) In a subsequent affidavit, he averred that neither Miguel Castillo, nor Miguel Carillo are members of his family or have ever been in his home on Willow Bay Drive in Barrington. Nor does he know anyone by either name. Finally, Dr. Rampurwala averred that neither Castillo nor Carillo were ever authorized to accept service of process on behalf of Metro.

¶ 28     On February 28, 2025, plaintiff responded to Dr. Rampurwala's motion to dismiss, arguing that the Yelp site reflected that Dr. Rampurwala and Metro had a business address at 1425 North Randall Road in Elgin and that Dr. Rampurwala is a top-rated cardiologist and operates at different locations, including at Advocate Sherman Hospital. There was also a blue checkmark, stating "claimed" and reflecting that the Yelp page was claimed by its owner, Dr. Rampurwala and Metro. Plaintiff alleged that he relied on the Elgin address as accurate when filing the November 8, 2023, summons.

¶ 29           D. Trial Court Rulings – Motions to Dismiss & Vacate Default Judgment

¶ 30     On April 23, 2025, the trial court granted, with prejudice, Dr. Rampurwala's amended motion to dismiss count III of plaintiff's first amended complaint. It determined that defendant had made a *prima facie* showing of plaintiff's failure to exercise reasonable diligence in effectuating personal service on him over the span of 15 months. Thus, the burden shifted to plaintiff to demonstrate with specificity that reasonable diligence was exercised and to offer an

explanation to satisfactorily justify any delays in service. Assessing the relevant factors, the court found that (1) 15 months was a "very long time" to serve defendant and "well after the expiration of the statute of limitations," and with Dr. Rampurwala playing no role in the delay; (2) as to plaintiff's activities, the court found that the first 90 days that plaintiff spent obtaining a 2-622 report went against him because no summons was issued during that time immediately after the refiling of the case and it rejected plaintiff's argument that he spent 140 days of the 7.6-month period waiting for ruling on two motions to dismiss by the hospital, where the wait time "should or could have been used to make sure all of the defendants had been served, especially since Dr. Rampurwala had not appeared in the case for over a year and there were specific case management hearings set for status on appearances and service of defendants during that time period"; (3) as to plaintiff's knowledge of Dr. Rampurwala's whereabouts, the court determined that this factor weighed against plaintiff because Dr. Rampurwala's whereabouts "were easily ascertainable as he continued to live and work at the same address during the relevant time period" (4) as to whether Dr. Rampurwala's location could be easily ascertained, the court found against plaintiff for the same reasons as the third factor; (5) as to actual knowledge of the complaint by Dr. Rampurwala, the court determined that this favored Dr. Rampurwala, referencing his "uncontested" affidavit, and his active involvement in the original case (even though he was not properly served in that case), versus no involvement/appearance in the refiled case for over one year, which supported his lack of knowledge of this case; (6) as to special circumstances affecting plaintiff's efforts, the court found that the time spent obtaining experts was "simply a necessary part of keeping his case active" and plaintiff knew it was a necessity upon refiling his case; the amount of down time between motion filings—15 months—was "simply too long to not realize that when you have not had a response from a defendant for over a year that maybe there is a service problem"; also, the fact

that Dr. Rampurwala timely participated in the original case reasonably showed that "something was not right with service/notice on this individual defendant"; and noting that an alias was issued in January 2024, which showed plaintiff knew he did not have service on the doctor; and plaintiff did not file an affidavit setting forth any justifiable or reasonable cause for the delay; and (7) as to actual service on Dr. Rampurwala, the court found this favored Dr. Rampurwala because personal service at an established and discoverable address did not occur for over 15 months and the case proceeded without him "and well beyond the one-year mark as it pertains to a settlement offer and prejudgment interest." It also found, pursuant to Illinois Supreme Court Rule 304(a), that there was no just reason to delay enforcement or appeal from its dismissal order.

¶ 31    Next, the court granted, with prejudice,[1] Dr. Rampurwala's amended motion to vacate the default order against Metro, for the reasons stated in defendant's motion and reply. It found that there was no proper service and made a Rule 304(a) finding as to that ruling as well. Plaintiff appeals.

¶ 32                                    II. ANALYSIS

¶ 33                            A. Dismissal of Count III

¶ 34    Plaintiff argues first that the trial court abused its discretion in dismissing count III of the complaint for lack of diligence in serving Dr. Rampurwala.

¶ 35    A ruling on a motion to dismiss pursuant to Rule 103(b) will not be disturbed absent an abuse of discretion. *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 213 (2007). An abuse

---

[1]The court's oral ruling noted that it was granting the motion with prejudice, but its written order does not reflect this. The oral ruling controls. *In re Tr. O.*, 362 Ill. App. 3d 860, 868 (2005) ("If there is a conflict between a trial court's written and oral orders, the oral order controls.").

of discretion occurs when a court's decision is unreasonable. *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 14.

¶ 36    "Rule 103(b) is intended to promote the expeditious management of litigation by vesting in the trial court wide discretion to dismiss a complaint when service is not effected with reasonable diligence." *Hernandez v. Ruiz*, 2026 IL App (1st) 232519, ¶ 38.  The rule's primary purpose is "the avoidance of intentional delay of service of summons upon a defendant for an indefinite period of time in order to circumvent the applicable statute of limitations." *Id.*  The rule does not delineate a specific period within which the defendant must be served, but the plaintiff must exercise reasonable diligence in doing so.  *Id.*

¶ 37    Rule 103(b) provides:

"(b) Dismissal for Lack of Diligence. If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct. The dismissal may be made on the application of any party or on the court's own motion. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances, including both lack of reasonable diligence in any previous case voluntarily dismissed or dismissed for want of prosecution, and the exercise of reasonable diligence in obtaining service in any case refiled under section 13-217 of the Code of Civil Procedure." Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 38    "Upon filing a motion to dismiss pursuant to Rule 103(b), the defendant must initially make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence in effectuating service after filing the complaint." *Hernandez*, 2026 IL App (1st) 232519, ¶ 40.  Delays of four to five months between the filing of the complaint and service have been held to be sufficient to establish a *prima facie* showing of the absence of reasonable diligence.  *Id.* (citing cases).

¶ 39    "Once the defendant establishes that the time between the filing of the complaint and the date of service suggests a lack of diligence, the burden then shifts to the plaintiff to provide a satisfactory explanation for the delay."  *Id.* ¶ 41.  The plaintiff must "demonstrate, by way of affidavit or other competent evidentiary materials, that reasonable diligence was exercised and that any delays in effecting service were justified."  *Mular v. Ingram*, 2015 IL App (1st) 142439, ¶ 21. "In the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal."  *Hernandez*, 2026 IL App (1st) 232519, ¶ 41.

¶ 40    In *Segal v. Sacco*, 136 Ill. 2d 282 (1990), the supreme court set forth seven factors to be considered when deciding a motion to dismiss pursuant to Rule 103(b).  A court may consider: (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) the defendant's actual knowledge of pendency of the action as a result of ineffective service; (6) special circumstances affecting the plaintiff's efforts; and (7) actual service on the defendant.  *Id.* at 287.

¶ 41    Rule 103(b)'s reasonable diligence requirement is not a subjective standard, but is based on an objective test of reasonable diligence in effectuating service; thus, whether a delay was intentional is not determinative.  *Hernandez*, 2026 IL App (1st) 232519, ¶ 42.  A "dismissal with prejudice is a harsh penalty that may only be justified when the delay in service of process is of a

length that denies a defendant a fair opportunity to investigate the circumstances upon which liability against the defendant is grounded." *Id.* ¶ 44.

¶ 42   Plaintiff argues that the passage of merely 15 months in effecting service reflected diligence here. He notes that he filed his amended complaint in November 2023, issued summonses on November 8 to Metro and Dr. Rampurwala, secured a sheriff's return on January 4, 2024, that he believed to be valid service, and had two alias summonses issued and directed to Dr. Rampurwala: on January 31, 2024, and on October 22, 2024. He also notes there were six total combined service attempts on Metro and Dr. Rampurwala, including abode service on Dr. Rampurwala on November 18, 2024. Plaintiff asserts that he acted in good faith and was reasonably lulled into believing that service had been completed when the sheriff executed corporate service on both defendants on January 4, 2024, via Metro's agent, Miguel Carillo, which was identical in form, location, and upon the same business agent, Miguel Carillo, for the May 11, 2022, service in the initial action. He notes that Dr. Rampurwala and Metro previously accepted service without objection and appeared by counsel on May 24, 2022. *Licka v. William A. Sales, Ltd.*, 70 Ill. App. 3d 929, 937-38 (1970) (reversing dismissal, where, although the plaintiff did not serve the defendant until 13 months after the amended complaint was filed, he had been "justifiably lulled" for four months of that period when service was mistakenly accomplished on a different doctor who shared the same name as the defendant; the plaintiff had otherwise persistently searched for the defendant's proper address and had sent four alias summonses within that period). Plaintiff maintains that he had no reason to suspect any defect and reasonably relied on the January 4, 2024, sheriff's return of service as valid. He argues that his reliance on the return was objectively reasonable, consistent with diligent prosecution, and any delay in service was excusable.

¶ 43    Plaintiff also contends that his continuous diligence and active case prosecution excuses the 15-month delay in abode service.  See, *e.g.*, *Cannon v. Dini*, 226 Ill. App. 3d 82, 87-88 (1992) (reversing dismissal of complaint, where a 13-month delay in serving the defendant did not reflect a lack of diligence; the plaintiff had a summons issued for the defendant one month after filing the complaint, and four attempts were made to effect service; the plaintiff successfully served two additional defendants; and, for seven months, the plaintiff was fending off motions to dismiss by the properly-served defendants; after they were resolved, the plaintiff diligently sought to serve the defendant).  He argues that, between November 2023 and October 2024, he actively litigated this matter, including filing a section 2-622 affidavit and physician's report, timely filing an amended complaint, responding to the hospital's two motions to dismiss, filing an amended supplemental physician's report and certificate of merit, filing another physician's report and certificate of merit, and engaging in written discovery.  Plaintiff contends that, contrary to *Segal* and Rule 103(b), the trial court elevated the length of the delay above all other considerations and failed to meaningfully analyze his good-faith efforts, the absence of prejudice, special circumstances causing delay, and the totality of the circumstances.

¶ 44    We conclude that the trial court did not err in assessing plaintiff's diligence in effectuating service.  The trial court reasonably determined that, based on the 15-month delay, Dr. Rampurwala made a *prima facie* showing of plaintiff's failure to exercise reasonable diligence in effectuating service.  Thus, the burden shifted to plaintiff to demonstrate with specificity that he exercised reasonable diligence and to offer an explanation to satisfactorily justify the 15-month delay.  In reaching its determination that plaintiff failed to exercise reasonable diligence or to offer a satisfactory justification for the delay, the court assessed each of the *Segal* factors.

¶ 45                    1. Length of Time Used to Obtain Service of Process

¶ 46    Addressing the length of time used to obtain service of process, the trial court determined that 15 months was a "very long time" to serve Dr. Rampurwala and "well after the expiration of the statute of limitations," with Dr. Rampurwala playing no role in the delay.

¶ 47    Plaintiff argues that the 15-month delay did not reflect a lack of reasonable diligence, where he was actively litigating the case during that period. He notes that the period coincided with months of mandatory section 2-622 compliance, court-ordered expert consultations, responses to two motions to dismiss, and ongoing written discovery.

¶ 48    We conclude that the court's findings were not unreasonable. Although there is no set period within which a defendant must be served, the court reasonably found that the 15-month delay did not weigh in plaintiff's favor. Further, plaintiff filed an alias summons in January 2024, but did not file another one until October 2024. Case law has held that delays of four or seven months can be sufficient to show a lack of diligence. See, *e.g.*, *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶¶ 82-84 (holding that four-month delay was facially unreasonable, where the defendant's place of business was readily ascertainable, no unusual circumstances could have delayed service for nearly four months, and the plaintiff offered no justification for the delay); *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 19 (seven-month delay sufficient to establish *prima facie* showing of lack of reasonable diligence).

¶ 49                                2. Plaintiff's Activities

¶ 50    The trial court assessed plaintiff's activities, finding that the first 90 days that plaintiff spent obtaining a section 2-622 report weighed against him because no summons was issued immediately after refiling the case. The court also rejected plaintiff's argument that he spent 140 days of the 7.6-month period between the alias summonses waiting for ruling on two motions to

dismiss, where the wait time "should or could have been used to make sure all of the defendant[s] had been served, especially since Dr. Rampurwala had not appeared in the case for over a year and there were specific case management hearings set for status on appearances and service of defendants during that time."

¶ 51 Plaintiff argues his activities in litigating the case during the 15-month period reflect his continuous diligence. He again notes the section 2-622 affidavits, his responses to two motions to dismiss, written discovery, and consultations with medical experts. Plaintiff also contends that these efforts concurrently occurred with his pursuit of service, while also asserting that he prioritized litigating the case before attempting to effect service after his initial efforts proved unsuccessful.

¶ 52 We conclude that the court did not err in weighing this factor in Dr. Rampurwala's favor. Plaintiff offered no satisfactory explanation for the 90-day delay in issuing a summons after refiling the case or the 7.6-month period (February to October 2024) following the return of the first (unserved) alias summons. Given these circumstances, the court's finding was not unreasonable.

¶ 53                           3. Plaintiff's Knowledge of Defendant's Location

¶ 54 The trial court found, as to plaintiff's knowledge of Dr. Rampurwala's location, that this factor weighed against him because Dr. Rampurwala's whereabouts "were easily ascertainable as he continued to live and work at the same address during the relevant time period."

¶ 55 Plaintiff argues that he had every reason to believe that Dr. Rampurwala remained located at 1425 North Randal Road in Elgin, the same address publicly and repeatedly held out as a business location by both him and Metro. Online sources such as Yelp, Healthgrades, and Google

showed as much, plaintiff contends, and this was consistent with prior valid service accepted by defendants in the 2022 action.

¶ 56    We conclude that the court did not err in assessing this factor.  Metro's own website reflected that it was located at 1479 Commerce Drive in Algonquin.  At a minimum, had plaintiff checked the Metro website, he would have noted that the address there was different than the one on the general sites he asserted he searched.  Further, as Dr. Rampurwala worked at the hospital, the hospital's address would likely have been listed in any search results but would not have necessarily reflected his place of business without further research.  Dr. Rampurwala's affidavit reflected that he practiced at Metro Heart & Vascular Institute, SC, located at 1479 Commerce Drive, Algonquin.  Throughout 2023 and 2024, he regularly practiced at that office, which was contained on the Metro Heart website, along with his name and photograph.  Dr. Rampurwala also averred that, throughout 2023 and 2024, his name and office address also appeared on Yelp and HealthGrades websites.  During these years, he resided at 15 Willow Bay Drive in Barrington, and his residential address was a matter of public record and listed on WhitePages.com throughout that time.  Plaintiff filed no counter-affidavit to refute any of these statements.  His alleged reliance on actions in the 2022 case cannot excuse obligations in this case, and, in any event, Dr. Rampurwala's prompt participation in the 2022 case put plaintiff on notice in this case when Dr. Rampurwala did not similarly act.

¶ 57        4. Ease with Which Defendant's Whereabouts Could Have been Ascertained

¶ 58    The trial court found that plaintiff could have easily ascertained defendant's whereabouts because he continued to live and work at the same address.  Plaintiff points to his internet searches, reliance upon which we addressed and rejected above.  We conclude that, given Dr. Rampurwala's affidavit statements, the court's determination was not unreasonable.

¶ 59                5. Defendant's Actual Knowledge of Pendency of Action

¶ 60    Next, addressing defendant's actual knowledge of the pendency of the action, the trial court determined that this factor weighed in Dr. Rampurwala's favor. The court relied on Dr. Rampurwala's affidavit and his active involvement in the initial 2022 case (even though, the court noted, he was not properly served in that case). His lack of participation in the current case, the court found, supported finding that he had no actual knowledge of the pending suit.

¶ 61    Plaintiff argues that the record reflects that Dr. Rampurwala had actual and constructive knowledge of the refiled action. Both he and Metro previously accepted service, via Miguel Carillo on their behalf on May 11, 2022. Further, plaintiff notes that co-defendant Sherman Hospital's address is also 1425 North Randall Road and that the hospital actively litigated and filed motions to dismiss throughout 2024. Finally, he again relies on his internet searches.

¶ 62    We conclude that the court did not err in determining that this factor weighed in Dr. Rampurwala's favor. As Dr. Rampurwala notes, unsworn hearsay from Google and related searches in 2025 cannot rebut Dr. Rampurwala's sworn statements that his office address in 2023 and 2024 was 1479 Commerce Drive in Algonquin. Further, plaintiff does not assert that anyone at the hospital notified Dr. Rampurwala about the refiled action.

¶ 63             6. Special Circumstances Affecting Plaintiff's Efforts

¶ 64    Addressing special circumstances, the trial court found that the time spent obtaining experts was merely a necessary part of the case and that plaintiff was aware of this when he refiled the action. The 15-month delay, the court determined, was "too long to not realize" there was an issue with serving Dr. Rampurwala, especially where Dr. Rampurwala timely participated in the initial case. The court also noted that an alias summons was issued in January 2024, which reflected

plaintiff's knowledge that he had not served Dr. Rampurwala. Finally, the court determined that plaintiff did not file an affidavit setting forth any justifiable or reasonable cause for the delay.

¶ 65    Plaintiff again notes his efforts in litigating this case, such as responding to motions, and his efforts to serve Dr. Rampurwala. We cannot conclude that the trial court's findings were unreasonable. The court's view that mere routine filings during the period and the need for an alias summons (which put plaintiff on notice as to service) did not evince special circumstances was reasonable. Further, plaintiff acknowledges that he prioritized routine filings (he "prioritized mandatory litigation requirements") over effecting service, which weighs against him.

¶ 66                                    7. Actual Service on Defendant

¶ 67    As to the final factor of actual service on Dr. Rampurwala, the trial court found in Dr. Rampurwala's favor because service on him at an established and discoverable address did not occur for over 15 months and the case progressed without him beyond the time for a settlement offer and to minimize prejudgment interest. Plaintiff argues that the record reflects sustained efforts at effecting service while prioritizing case management obligations. We conclude that the court's determination was not unreasonable for the reasons stated above.

¶ 68    In sum, considering the totality of the circumstances, the trial court did not abuse its discretion in granting Dr. Rampurwala's Rule 103(b) motion to dismiss count III of plaintiff's first amended complaint.

¶ 69                                    B. Vacatur of Default Judgment Against Metro

¶ 70    Plaintiff next argues that the trial court erred in vacating the default judgment against Metro, where there was *prima facie* evidence of valid service and no clear or convincing evidence offered to rebut the sheriff's affidavit.

¶ 71    "The decision to grant or deny a motion to vacate a default judgment lies within the sound discretion of the trial court, and we will reverse only if the trial court abused its discretion." *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941 (1999).  Generally, we review *de novo* whether a trial court had personal jurisdiction.  *Illinois Service Federal Savings & Loan Ass'n of Chicago v. Manley*, 2015 IL App (1st) 143089, ¶ 36.

¶ 72    Personal jurisdiction must be established with service of process or voluntary submission to the court's jurisdiction.  *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18.  When a defendant has not been served as required by law, the court has no jurisdiction over that defendant and a default judgment entered against him or her is void.  *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 32 (2006).

¶ 73    "Generally, the sheriff's return of service is *prima facie* evidence of service, which can be set aside only by clear and satisfactory evidence."  *Dei v. Tumara Food Mart, Inc.*, 406 Ill. App. 3d 856, 862 (2010).  However, when a corporation is sued, the sheriff's return, as to the fact of agency, is not conclusive.  *Id.*  For service of process on a corporation to be effectively made upon an agent of the defendant, such agent must have actual authority to accept service on behalf of the corporation.  *Slates v. International House of Pancakes, Inc.*, 90 Ill. App. 3d 716, 728 (1980).  A "recital in the return that service was made upon a person who was an agent of the corporate defendant *** can be denied and placed in issue by the affidavit of the defendant.  If the affidavit stands unrebutted or uncontradicted, it is a proper basis for quashing the service."  *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172 (1983).

¶ 74    Plaintiff contends that, on January 4, 2024, the sheriff's office executed corporate service on both Metro and Dr. Rampurwala through business agent Miguel Carrillo at 1425 North Randall Road, the same method, address, and agent as the initial 2022 case.  Both defendants, he notes,

had accepted the identical service in 2022, appearing by counsel only 13 days later and without objection to service. Thus, he argues, he reasonably relied on historical precedent and on the facial validity of the sheriff's sworn return. Plaintiff further argues that Dr. Rampurwala's affidavit is self-serving, uncorroborated, and insufficient to rebut the *prima facie* evidence of proper service (*i.e.*, deputy Gomez's January 8, 2024, return of service). He contends that Dr. Rampurwala's assertion that he regularly practiced at 1479 Commerce Drive and was never personally served is contradicted by substantial evidence, including internet searches showing Yelp, Google, and HealthGrades listings of Metro's place of business at 1425 Randall Road in Elgin and a blue check with the word "claimed" on the Yelp page, which reflected that the business listing was actively maintained and verified by defendants. Based on this evidence, plaintiff contends, he had every reason to rely on that address as accurate when issuing summonses on November 8, 2023.

¶ 75    Dr. Rampurwala responds that Metro never filed a general appearance and never waived the requirement of proper service of process in this case. Both returns of service filed on January 8, 2024, he contends, which included a copy of the November 8, 2023, summons issued to Metro, showed a failed service attempt by deputy Ray on December 16, 2023, and second separate attempts made by deputies Gomez and Ray on January 4, 2024. Dr. Rampurwala notes that plaintiff never alerted the trial court that the November 8, 2023, summons to Metro had expired after December 8, 2023, and, thus, was invalid when the sheriff's deputies attempted to serve it at the hospital on December 16, 2023, and January 4, 2024. Further, he asserts, even if the summonses served by Ray and Gomez had not expired by January 4, 2024, the service of summons on that day still did not have the effect of acquiring jurisdiction over Metro because it listed the wrong address for Metro (listing the hospital instead of Metro's address at 1479 Commerce Drive in Algonquin).

¶ 76    Dr. Rampurwala also contends that Ray indicated on the January 8, 2024, return of service that he went to the hospital on January 4, 2024, and accomplished substitute "abode" service over Metro rather than service on a corporation.  He did not even attest that he served a Metro agent and instead certified that he left the summons and complaint with a family member over the age of 13 at the usual place of abode of the "individual defendant."  This was improper because the statute does not permit abode service of a corporate defendant.  735 ILCS 5/2-204 (West 2022) ("A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law.  A private corporation may also be notified by publication and mail in like manner and with like effect as individuals.").  He further argues that even Ray's noncertified statements in his return of service failed to show that Metro's registered agent, Dr. Rampurwala, had been served with process.  Instead, Ray stated that he served a registered agent named Miguel Castillo.  However, Castillo was not an employee or agent of Metro and was never authorized to accept service of process on Metro's behalf.  Dr. Rampurwala further argues that Gomez's January 8, 2024, return of service (directed against Metro on Dr. Rampurwala) listed the served party as Dr. Rampurwala but improperly attached the summons directed to Metro instead.  If an unexpired summons directed against Metro had in fact been personally served to Dr. Rampurwala at the hospital, he asserts, then the court would have obtained jurisdiction over Metro.  However, the summons was served on Miguel Carillo, who was never a registered agent for Metro and was not its employee or agent.  Further, Carillo was never authorized to accept service of process on Metro's behalf.  Dr. Rampurwala notes that plaintiff never provided evidence to challenge his affidavit's statements that Castillo and Carillo were not agents of Metro or authorized to accept service of process on Metro's behalf.

¶ 77    We conclude that Dr. Rampurwala's unrebutted affidavit reflected that no agent of Metro was served.  Dr. Rampurwala averred that neither Miguel Castillo, nor Miguel Carillo, were ever authorized to accept service of process on behalf of Metro.  He also averred that neither Miguel Castillo, nor Miguel Carillo, are members of his family or have ever been in his home on Willow Bay Drive in Barrington.  Nor does he know anyone by either name.  No evidence rebutted these statements.  Plaintiff offers only that service was effected in the 2022 case, which is not directly relevant here, and points to general internet searches conducted after the relevant period.  This evidence does not act to rebut Dr. Rampurwala's affidavit statements.  Thus, the returns of service did not reflect service on anyone with actual authority to accept service on behalf of Metro.

¶ 78    In sum, because Metro was never properly served, the trial court never had personal jurisdiction over it and properly vacated the default judgment against Metro.

¶ 79                                   III. CONCLUSION

¶ 80    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 81    Affirmed.